UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

**ROBERT A. ROLLICK, JR.,**

Plaintiff,

                                                                                                                      C.A. No. 1:25-CV-00589-MSM-PAS

          V                      (Removed from Newport County Superior Court,

                                                                                                                    C.A. No. NC-2025-0441)

**JEFFREY PALMER,**

**UNITED YACHT SALES, LLC, and**

**CHRISTIAN GUTHRIE,**

Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CHRISTIAN GUTHRIE'S RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff, Robert A. Rollick, Jr. ("Plaintiff" or "Rollick"), appearing pro se, hereby submits this Memorandum of Law in Opposition to Defendant Christian Guthrie's ("Guthrie") Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## INTRODUCTION

Guthrie's motion rests on an incomplete and misleading factual record. It omits the dispositive fact that Guthrie maintained continuous, targeted communications with Plaintiff in the Rhode Island/New England coastal market regarding a transaction he knew was being handled by a broker operating from that market. Guthrie then deployed numerous direct communications with

third parties and internet defamation specifically calculated to destroy Plaintiff's business and professional standing in the Newport marine market and beyond.

His motion ignores his initiation and continuation of a bank recall that froze Plaintiff's accounts while Plaintiff was living and working at the Massachusetts/Rhode Island border; his coordinated communications with others in the yachting industry that interfered with Plaintiff's employment; and his nationwide Internet defamation expressly targeting Plaintiff's professional reputation in the Northeast marine market.

When the full record is considered—including the exhibits attached and incorporated herein—the constitutional requirements for specific personal jurisdiction are satisfied. Guthrie purposefully directed intentional tortious conduct at a Rhode Island broker, causing foreseeable financial and reputational harm in Rhode Island and in the closely linked Newport marine marketplace. Exercising jurisdiction over him in this District is both lawful and reasonable. His Rule 12(b)(2) motion should therefore be denied.

## I. BACKGROUND

For purposes of this motion, Plaintiff summarizes the key facts relevant to jurisdiction. These facts are supported by Plaintiff's exhibits and sworn materials and must be taken as true at this stage.

**1. Plaintiff's Rhode Island-based brokerage presence**

From approximately 2021 through 2025, Plaintiff lived and worked in the Massachusetts/Rhode Island coastal region—principally Fall River, Massachusetts and the Newport/Tiverton, Rhode Island area—and operated as a yacht broker in the Newport marine marketplace. (Ex. K – residency and Newport photographs; Ex. L – Bank of America business account-opening documents showing Raynham/Fall River area; Ex. M – Black Pearl Newport employment photographs; Ex. Q – Sandy Hook Yacht Sales ("SHYS") Newport appointment emails.)

Plaintiff was publicly and professionally associated with the Newport, Rhode Island market. SHYS appointed Plaintiff to build out its Newport office and market presence. (Ex. Q.) Plaintiff also worked within Newport's marine and hospitality sector, including at the Black Pearl and within the Newport waterfront community. (Ex. M, Ex. N.)

Plaintiff's professional reputation was further established through Newport-centered media exposure, including coverage in Yachting Magazine and Powerboat Magazine, and a nationally

aired Tennis Channel segment featuring Plaintiff's representation of The Black Pearl, which continues to re-air annually during Tennis Hall of Fame programming in Newport, Rhode Island. (Ex. M, Ex. N.)

Plaintiff's primary business banking was likewise established in the New England region. The Bank of America business accounts used in the transaction were opened and maintained through the Raynham, Massachusetts banking center, anchoring Plaintiff's financial operations to the Massachusetts/Rhode Island coastal market. (Ex. L.)

**2. The Regulator 34SS transaction and Guthrie's recall**

The transaction at issue involved a 34-foot Regulator vessel sold by Joseph Silvestro ("Silvestro") to Defendant Christian Guthrie ("Guthrie"). Plaintiff acted as the broker at the parties' request. The deal was handled as a private sale at the seller's request, not through United Yacht Sales, and neither Rhode Island nor Massachusetts required a special broker escrow license for such a private arrangement where the parties expressly agreed to Plaintiff's role. (Ex. P; Ex. S.)

Guthrie wired $200,000 in purchase funds to Plaintiff's Merrill/Bank of America business accounts. (Ex. S.) Shortly after taking delivery of the vessel in New Jersey, Guthrie initiated a wire recall through JPMorgan Chase, asserting that the funds had been sent without a valid contract. (Ex. S – Bank of America fraud-department records; Ex. T – Guthrie communications.)

That assertion was false. Written contracts governing the transaction did exist. Bank of America's Fraud and Claims Department required Plaintiff to submit the executed agreements, which Plaintiff did. After reviewing the contractual documentation, the bank honored the claim in Plaintiff's favor, lifted the $200,000 hold, and transmitted a resolution notice to JPMorgan Chase regarding the buyer's recall request. (Ex. S.)

Notwithstanding the bank's determination, the recall request itself caused Plaintiff's New England–based business accounts to be restricted for weeks, including funds belonging to Silvestro and other clients, disrupting Plaintiff's banking and brokerage operations in the Rhode Island/Massachusetts coastal market where Plaintiff lived and worked. (Ex. S; Ex. Y.)

Contrary to Guthrie's suggestion that the recall was initiated "at Plaintiff's direction," bank records demonstrate that the recall was initiated on Guthrie's side. Those same records show that

both Guthrie and Silvestro were aware of the active recall by at least March 11, 2025, yet continued to deny its existence and pressured Plaintiff to obtain personal loans to "cover" the shortfall while the bank investigation remained ongoing. (Ex. U; Ex. S.)

**3. Guthrie's threats, harassment, and continuing contacts**

After initiating the recall, Guthrie repeatedly contacted Plaintiff and Plaintiff's counsel, making threats of jail, demanding immediate payment, and refusing to acknowledge the bank's investigation. (Ex. T; Ex. U.) These communications were received by Plaintiff while he was living and working in the Massachusetts/Rhode Island border region, including Fall River and Tiverton, and while Plaintiff was traveling for work within the Rhode Island marine market, including to the Palm Beach International Boat Show. (Ex. K; Ex. Q.)

Guthrie also communicated false "no contract" and "escrow theft" narratives to third parties in the yachting industry, including Rick Obey Yacht Sales and United Yacht Sales—narratives that were not sustained during Bank of America's fraud/claims review, which resulted in the claim being honored in Plaintiff's favor and the $200,000 hold being removed. (Ex. R; Ex. O; Ex. S.)

Rick Obey Yacht Sales, a Florida-based company that had been onboarding Plaintiff following a highly successful Palm Beach International Boat Show, withdrew from proceeding based in part on the false narrative advanced by Guthrie and Silvestro. (Ex. R; Ex. N; Ex. M.)

Accordingly, Guthrie's conduct caused substantial harm within Rhode Island and the surrounding New England marine market, while also impacting business relationships Plaintiff was developing elsewhere in direct connection with his Newport brokerage presence.

**4. National Internet defamation on TheHullTruth.com**

On or about March 16, 2025, Guthrie published the following statement on TheHullTruth.com, a large national boating forum:

"Recently worked with Robbie Rollick of United Yacht Sales and recommend anyone stays away from him. He has since been terminated by United."

Additional posts on the same forum accused Plaintiff of theft and of "stealing client funds." (Ex. V.) TheHullTruth.com is a major national boating forum heavily frequented by Rhode Island, Massachusetts, and Connecticut boaters and is a primary online community for New England

offshore and sportfishing owners. Guthrie's statements were therefore published directly into Plaintiff's home marine market and were read by consumers and industry participants with whom Plaintiff did business in Rhode Island and throughout the New England region. (Ex. V; Ex. K; Ex. N.)

### 5. The Florida criminal proceedings are a product of "forum shopping" and reinforce Rhode Island's jurisdiction

Guthrie points to a pending criminal matter in Monroe County, Florida (Case No. 2025-CF-00707-A-K). However, these proceedings are the result of bad faith "forum shopping" by Defendants to bypass the very geography Guthrie admits exists. In the Florida matter, Plaintiff submitted a Motion to Dismiss containing **15 undisputed jurisdictional facts** establishing that the vessel was in New York, the banking was in Massachusetts, and the transaction had zero nexus to Florida.

In its Traverse, the State of Florida cited 14 of those 15 facts—including critical points regarding the Northeast location of the vessel and the New England-based bank—as **"irrelevant."** Under Florida Supreme Court law, by failing to specifically dispute these facts and instead labeling them irrelevant, the State has effectively admitted them. See *State v. Kalogeropolous, 758 So. 2d 110, 112 (Fla. 2000)*.

Furthermore, the State's only remaining theory—that Plaintiff was "holding out" as a Florida broker during a private sale in the Northeast—is legally absurd and currently **under advisement** before the honorable Judge Mark Jones. The fact that Defendants orchestrated a criminal arrest based on a theory even the State admits has no geographic relevance proves an intentional "surgical strike" aimed at Plaintiff's Rhode Island-based professional standing.

### A. Plaintiff's Domicile and Economic Center are Rhode Island

From 2021 through 2024, Plaintiff filed federal and state tax returns reflecting income earned in the Rhode Island and Massachusetts coastal region. Plaintiff's banking, brokerage activity, communications, and financial operations were centered in the Rhode Island/Fall River/Newport area. These facts establish Plaintiff's economic center in Rhode Island and were known to Defendants when they directed their conduct toward Plaintiff's business interests.

### B. The Florida Default is Irrelevant to Specific Jurisdiction Here

The existence of a default judgment in Florida does not cure the absence of jurisdictional nexus. Plaintiff declined to litigate a Northeast-based vessel transaction in a forum lacking any factual connection to the dispute. That decision does not immunize Defendants from suit in the proper forum.

### C. Defendants Targeted Plaintiff (The "Effects Test")

Defendants engaged in a coordinated course of conduct designed to interfere with Plaintiff's business. Plaintiff was contacted by Defendants and their associates, subjected to online defamation, and targeted through communications aimed at freezing New England-based business accounts.

Plaintiff was arrested on June 26, 2025, one day after service of filings in the Florida civil action. The close temporal proximity between civil service and criminal process further illustrates Defendants' exploitation of an out-of-state forum to overwhelm Plaintiff while he was attempting to resolve the banking recall.

These Florida proceedings are therefore not independent events but consequences of the same targeted interference that forms the basis of this action. Guthrie's admission that the transaction occurred in the Northeast confirms that Rhode Island is the proper forum to adjudicate these claims.

## II. LEGAL STANDARD

Guthrie correctly recites that under Fed. R. Civ. P. 12(b)(2), Plaintiff bears the burden of establishing that the Court may exercise personal jurisdiction. See *A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016). At the prima facie stage, the Court accepts properly supported facts proffered by Plaintiff as true and draws reasonable inferences in Plaintiff's favor. Id.

Specific jurisdiction exists where:

1. The claims "arise out of or relate to" the defendant's forum-state activities.

2. The defendant's contacts represent a purposeful availment of the privilege of conducting activities in the forum; and

3. The exercise of jurisdiction is reasonable.

*Scottsdale Capital Advisors Corp. v. Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). Guthrie's motion fails all three prongs.

## III. PLAINTIFF'S CLAIMS ARISE OUT OF, AND RELATE TO, GUTHRIE'S FORUM-CONNECTED CONDUCT

Guthrie admits in his own Memorandum of Law that the **"underlying vessel transaction occurred entirely in the Northeast."** (Guthrie Mem. at 1, 5). This judicial admission is

dispositive. Having conceded that the locus of the deal was the Northeast, Guthrie cannot now rely on a Florida prosecution—which his own exhibits show is based on the false claim that the deal happened in Florida—to avoid the jurisdiction of this Court. By Guthrie's own admission, the "Northeast" is the site of the transaction; Plaintiff's evidence (Ex. K, L, S) establishes that the specific center of that Northeast activity was Rhode Island and the closely linked Newport/Fall River corridor.

**A. Plaintiff's brokerage business and injuries were centered in the Rhode Island marine market**

The relatedness inquiry in tort cases examines both cause in fact and legal cause, asking whether the injury would have occurred "but for" the defendant's forum-connected conduct. *Scottsdale, 887 F.3d at 20–21*. Here, Plaintiff's affidavits and exhibits demonstrate that:

• Plaintiff lived and worked in the Massachusetts/Rhode Island border region and operated as a yacht broker selling into the Newport, Rhode Island market during all relevant times. (Ex. K, Ex. L, Ex. M, Ex. Q.)

• Plaintiff's banking, communications, and brokerage activities for the Regulator transaction were handled from that home base, including while travelling for work when the recall froze funds. (Ex. S, Ex. Y.)

• Plaintiff's reputation and income as a broker depended on relationships with Rhode Island boaters, marinas, brokers, and employers—including SHYS's planned Newport office. (Ex. Q, Ex. N, Ex. M.)

The financial harm from the recall and the reputational harm from Guthrie's defamation were therefore felt primarily in Rhode Island and its immediate coastal region. That nexus is sufficient to satisfy relatedness.

**B. Guthrie's recall and follow-on conduct caused direct financial harm to Plaintiff in Rhode Island**

The JPMorgan recall initiated by Guthrie triggered a fraud/claims review at Bank of America/Merrill that restricted Plaintiff's New England–based business accounts, including client funds. (Ex. S; Ex. Y.) Guthrie's recall request was premised on the assertion that there was "no contract," but Bank of America required Plaintiff to submit the executed agreements and ultimately honored the claim in Plaintiff's favor and removed the $200,000 hold. (Ex. S.)

The restriction and disruption were felt where Plaintiff lived, banked, and worked—within the Rhode Island/Massachusetts coastal market—and Guthrie's conduct was a substantial factor in creating foreseeable financial harm in that forum. "But for" the recall and the follow-on threats

and accusations, Plaintiff would not have suffered the same financial damage in Rhode Island and the closely connected Newport marine market. (Ex. K; Ex. L; Ex. S; Ex. S.)

**C. Guthrie's Internet defamation was expressly aimed at causing injury in Rhode Island**

Guthrie contends that his Internet postings cannot support jurisdiction because Plaintiff has not alleged the statements were widely viewed in Rhode Island. (Guthrie Mem. at 6.) This argument fails because it ignores the targeted nature of Guthrie's conduct. In the First Circuit, jurisdiction is proper where a defendant intentionally aims conduct at a forum resident, knowing that the "brunt of the injury" will be felt in that state. See *Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 17–18 (1st Cir. 2009) (upholding jurisdiction in Rhode Island where the defendant knew the plaintiff was based there and that the tortious conduct would cause financial injury there)*.

TheHullTruth.com is not just a general website; it is one of the primary boating forums for New England offshore and sportfishing boaters. (Ex. V.) By posting specific accusations of theft against a broker he knew was operating in the Northeast market, Guthrie aimed his conduct to destroy Plaintiff's reputation in the very location where Plaintiff earns his living. As in Astro-Med, Guthrie's conduct was "calculated to cause injury" to Plaintiff in Rhode Island. Given Plaintiff's role as a Newport-area broker and the forum's New England user base, the injury to Plaintiff's reputation was foreseeable and concentrated in his home market. That satisfies relatedness for the defamation-based claims.

## IV. GUTHRIE PURPOSEFULLY AVAILED HIMSELF OF THIS FORUM BY AIMING HIS CONDUCT AT A RHODE ISLAND BROKER

The decisive due-process question in intentional tort cases is whether the defendant's conduct was "expressly aimed" at the forum, such that he should reasonably anticipate being hailed into court there. *Calder v. Jones, 465 U.S. 783, 789–90 (1984); Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998)*.

**A. Guthrie knew or should have known Plaintiff operated from Rhode Island/New England**

Guthrie's affidavit asserts that he "did not know" Plaintiff had any connection to Rhode Island and believed him to be a Florida broker. That is contradicted by the documentary record. Guthrie's claim of ignorance regarding Plaintiff's location is belied by facts:

1. Plaintiff communicated with Guthrie and Silvestro from telephone numbers and contact information associated with the Massachusetts/Rhode Island coastal region, and from locations in and around the Newport/Tiverton market. (Ex. U; Ex. K; Ex. L.)

2. Guthrie did not interact with a generic "web broker"; he interacted with an internationally recognized broker who was physically inspecting, negotiating, and closing numerous vessels in

New England, and whose professional identity is inextricably linked to the Newport boat show circuit—facts Guthrie discussed with third parties. (Ex. Q; Ex. N; Ex. M; Ex. R.)

Accordingly, Guthrie could not reasonably have been unaware that Plaintiff was operating from Rhode Island and the surrounding New England coastal market.

## B. Guthrie's threats and interference were directed at Plaintiff's Rhode Island business relationships

Guthrie's participation in the Florida "holding out" narrative further demonstrates purposeful availment. Guthrie was fully aware that the vessel was in the Northeast and that the funds were wired to a **Bank of America account in Raynham/Fall River, Massachusetts (Ex. L).** Despite this knowledge, he and Silvestro provided a narrative to Florida authorities designed to trigger the arrest of a broker they knew was operating in the Rhode Island market. This intentional misuse of out-of-state process to harm a resident of this District satisfies the "effects test" for jurisdiction. See *Calder v. Jones, 465 U.S. 783 (1984).*

Furthermore, Guthrie and Silvestro took their narrative to third parties, including Rick Obey Yacht Sales and Sandy Hook Yacht Sales, both of whom were evaluating or employing Plaintiff in roles directly connected to the Rhode Island market. (Ex. R; Ex. O; Ex. N.) These actions were not random; they were targeted efforts to cut off Plaintiff's ability to work as a broker, including specifically in the Newport market that Plaintiff was developing for SHYS and in the broader New England region. Under Calder, that intentional targeting of a forum-centered business relationship satisfies purposeful availment.

## C. Guthrie's nationwide Internet defamation was expressly aimed at Plaintiff's known New England market

Posting on TheHullTruth.com is not a passive, anonymous act. Guthrie chose a national boating forum with heavy New England participation, used Plaintiff's full name and brokerage identity, and that customers should "stay away from him". (Ex. V.) Plaintiff's livelihood depended on his professional reputation and client relationships in the New England marine market.

Guthrie chose TheHullTruth.com, a national boating forum with substantial participation from Rhode Island, Massachusetts, and Connecticut boaters. This was not a shout into the void; it was a surgical strike at Plaintiff's reputation in the precise geographic community (Newport/New England) where Plaintiff solicits clients. Courts in this Circuit have held that such conduct satisfies purposeful availment. See *Noonan, 135 F.3d at 90–92 (defamation aimed at plaintiff's Massachusetts reputation supports jurisdiction); Hugel v. McNell, 886 F.2d 1, 5–6 (1st Cir. 1989) (defamatory statements to a national publication with foreseeable harm in the forum sufficient under Calder).*

## V. EXERCISING JURISDICTION OVER GUTHRIE IS REASONABLE

Finally, the "gestalt factors" strongly support jurisdiction in this District. See Astro-Med, 591 F.3d at 10.

• **Defendant's burden of appearing:** Guthrie is a New Jersey resident. Traveling from New Jersey to Rhode Island is not unduly burdensome, particularly compared with litigating in Florida, which Guthrie points to as an alternative.

• **Forum state's interest:** Rhode Island has a strong interest in protecting the integrity of its marine industry and the reputation of brokers who live and work in its coastal communities.

• **Plaintiff's interest in convenient and effective relief:** Plaintiff lives in Tiverton, Rhode Island, and conducts his brokerage business in and around Newport. (Ex. K, Ex. Q.) Litigating in his home forum is necessary for him to obtain effective relief, particularly as a pro se litigant.

• **Judicial system's interest in efficiency:** The witnesses and evidence regarding Plaintiff's reputation, business relationships, and financial harm are concentrated in Rhode Island, Massachusetts, and nearby New England states.

• **Shared social policy interests:** Allowing intentional tortfeasors to escape jurisdiction merely by residing two states over would undermine the deterrent function of defamation and interference law in closely integrated regional economies like New England's marine sector.

Considering all factors, exercising jurisdiction over Guthrie in Rhode Island "comports with fair play and substantial justice". *Ford Motor Co., 141 S. Ct. at 1024.*

## VI. EXHIBIT CATALOG (A–Z)

Plaintiff provides the following exhibit list, converting prior numeric labeling into lettered exhibits for use with this Opposition.

**Exhibit A** – e.g., Defendant's Motion to Dismiss

**Exhibit B** – - e.g., Affidavit of Guthrie

**Exhibit C** – Guthrie Exhibit 1

**Exhibit D** – Guthrie Exhibit 2

**Exhibit E** – Guthrie Exhibit 3

**Exhibit F** – Guthrie Exhibit 5

**Exhibit G** – Guthrie Exhibit 6

**Exhibit H** – Guthrie Exhibit B

**Exhibit I** – Guthrie Exhibit C

**Exhibit J** – Show_Temp.pl.pdf

**Exhibit K** – Residency and Newport photographs showing Plaintiff's presence in Rhode Island and the Fall River/Newport region.

**Exhibit L** – Bank of America business account-opening records (Raynham/Fall River, MA), establishing the Northeast "Situs" of the funds.

**Exhibit M** – Black Pearl and Newport employment photographs and related documentation establishing Plaintiff's work within the Newport waterfront.

**Exhibit N** – Newport boat show advertisements and related marketing demonstrating Plaintiff's participation in the Newport marine market.

**Exhibit O** – Notices of Civil Action and Demand to Cease Unlawful Conduct and proofs of personal service (NOCA documents) regarding Palmer and related parties.

**Exhibit P** – Federal civil complaint filed in Rhode Island (Rollick v. Palmer, United Yacht Sales, and Guthrie).

**Exhibit Q** – Sandy Hook Yacht Sales ("SHYS") emails and documents appointing Plaintiff to develop the Newport, Rhode Island office and market presence.

**Exhibit R** – Emails and correspondence from Jeff Palmer and others evidencing harassment and business interference, including Rick Obey Yacht Sales communications and fallout after the Palm Beach International Boat Show.

**Exhibit S** – Bank of America Fraud & Claims Email Thread (Claim 18MAR2025-161962) (claim honored in Plaintiff's favor; $200,000 hold removed; resolution notice transmitted to JPMorgan Chase).

**Exhibit T** – Guthrie deception and harassment screenshots, including threats of jail and demands that Plaintiff obtain loans despite the recall.

**Exhibit U** – Messages among Silvestro, Guthrie, and Plaintiff demonstrating their knowledge of the recall around March 11, 2025, and continued denials thereafter.

**Exhibit V** – Screenshots of TheHullTruth.com posts and threads containing false and defamatory statements about Plaintiff's brokerage work and alleged "termination."

**Exhibit W** – Florida license cancellation and regulatory correspondence, included to show context and alleged mischaracterization of Plaintiff's licensing status.

**Exhibit X** – Liberty Mutual total-loss settlement letter and related insurance documentation, illustrating additional financial impact and timing in relation to the recall.

**Exhibit Y** – Merrill account statements, screenshots, and related materials previously sent to Silvestro demonstrating available holdings, account values, and the impact of the recall and freeze.

**Exhibit Z** – Florida Jurisdictional Filings (25-CF-000707-A-K), including Plaintiff's Omnibus Motion to Dismiss and the State's Traverse addressing 14 jurisdictional facts as 'irrelevant,' with the motion currently under advisement.

Plaintiff reserves the right to supplement and refine this exhibit catalog as discovery proceeds and as additional documents are formally obtained or authenticated.

**VII. CONCLUSION** For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant Christian Guthrie's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and grant such further relief as the Court deems just and proper.

Respectfully submitted,

Date: December 29th, 2025

**Robert A. Rollick, Jr.**

**Plaintiff, pro se**

1 Mill Street, Unit 1515

Tiverton, RI 02878

Email: rarollick@gmail.com

Dated: November 26, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of December 2025, I caused a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendant Christian Guthrie's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction to be served by email, upon:

**Michael E. Monti, Esq.**

Sayer Regan & Thayer, LLP

130 Bellevue Avenue

Newport, RI 02840

mmonti@srt-law.com

**W. Scott Turnbull, Esq.**

Crary Buchanan, P.A.

759 SW Federal Highway, Suite 106

Stuart, FL 34994

turnbull@crarybuchanan.com

**United Yacht Sales, LLC**

Attn: Jeffrey Palmer, President

110 SW Atlanta Avenue

Stuart, FL 34994

**/S/ Robert A. Rollick, Jr.**

1 Mill Street, Unit 1515

Tiverton, RI 02878

rarollick@gmail.com